UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLY FINANCIAL INC., | No.  2:15-cv-1522-TLN-KJN |
| Plaintiff, | |
| v. | <u>ORDER</u> |
| MICHAEL G. PETERS, | |
| Defendant. | |

<u>INTRODUCTION</u>

      Presently pending before the court is plaintiff Ally Financial Inc.'s ("plaintiff" or "Ally") motion for entry of a default judgment against defendant Michael G. Peters, who is the only named defendant in this action.  (ECF No. 19.)[1]  After defendant initially failed to oppose plaintiff's motion in accordance with Local Rule 230, the court vacated the hearing on the motion and provided defendant with an additional opportunity to oppose plaintiff's motion.  (ECF No. 21.)  Subsequently, defendant again failed to oppose the motion by the required deadline.

      After carefully considering the written briefing, the court's record, and the applicable law, the court GRANTS plaintiff's motion.

---

[1] All parties who appeared in the action have consented to the jurisdiction of a United States Magistrate Judge for all purposes, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (ECF No. 23.)

1

BACKGROUND

The background facts are taken from plaintiff's operative verified complaint, unless otherwise noted. (See Complaint, ECF No. 2 ["Compl."].) Defendant was the president of Central Valley Buick, Olds, Pontiac-GMC, Inc. ("Central Valley"), a car dealership in Manteca, California. (Compl. ¶¶ 5-6, 8.) Ally (and/or its predecessors and assignors) provided financing to Central Valley pursuant to three loan agreements, which also provided Ally with a security interest in Central Valley's personal property: (a) the Wholesale Agreement and General Security Agreement; (b) the Revolving Line of Credit Agreement; and (c) the Commercial Equipment Loan and Security Agreement (collectively, the "Loan Agreements"). (Compl. ¶¶ 2-3, 9-15, Exs. A-D.) Additionally, pursuant to a written guaranty (the "Guaranty"), defendant himself personally guaranteed full payment of all of Central Valley's debts to Ally, together with all costs, expenses, and attorneys' fees incurred by Ally in connection with any default. (Compl. ¶¶ 16-18, 26, 30, Ex. E.)

Ultimately, Central Valley defaulted on its obligations under the Loan Agreements, and consistent with those agreements, Ally demanded payment in full and surrender of all collateral. (Compl. ¶¶ 19-20, 27.) Subsequently, Central Valley voluntarily surrendered the collateral to Ally pursuant to a Voluntary Surrender Agreement, which was executed by defendant in his capacity as president of Central Valley and acknowledged by defendant in his capacity as a guarantor of Central Valley. (Compl. ¶ 21, Ex. F.) Thereafter, Ally disposed of the collateral in a commercially reasonable manner, and, after deducting its costs and expenses of disposing of the collateral, Ally applied the proceeds to the amounts due to Ally from Central Valley under the Loan Agreements, leaving a deficiency of $506,954.29 as of July 15, 2015, exclusive of any attorneys' fees and costs. (Compl. ¶¶ 22-23, 29.) Although Ally has on several occasions demanded that defendant pay the deficiency pursuant to the Guaranty, defendant failed to do so. (Compl. ¶¶ 24, 27-28, Ex. G.)

////

////

////

Based on the above, plaintiff commenced this action alleging a single claim for breach of personal guaranty against defendant. (Compl. ¶¶ 25-30.)[2] In the complaint, plaintiff sought damages (together with interest and other charges as allowed by contract), costs, and attorneys' fees. (See Complaint at 6, "Prayer.") After defendant was properly served with process and failed to appear in the action, the Clerk of Court, upon plaintiff's request, entered defendant's default. (ECF Nos. 13-14, 18.) The instant motion for entry of default judgment followed. (ECF No. 19.)

LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

As a general rule, once default is entered, well-pled factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs,

---

[2] The complaint invoked the court's diversity of citizenship jurisdiction, because plaintiff and defendant are citizens of different states, and the amount in controversy exceeds $75,000.00. See 28 U.S.C. § 1332.

285 F.3d 899, 906 (9th Cir. 2002).  In addition, although well-pled allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim").  A party's default does not establish the amount of damages.  Geddes, 559 F.2d at 560.

DISCUSSION

Appropriateness of the Entry of Default Judgment under the Eitel Factors

1.  *Factor One: Possibility of Prejudice to Plaintiff*

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, plaintiff would face prejudice if the court did not enter a default judgment, because plaintiff would be without another recourse against defendant.  Accordingly, the first Eitel factor favors the entry of a default judgment.

2.  *Factors Two and Three: The Merits of Plaintiff's Substantive Claim and the Sufficiency of the Complaint*

The court considers the merits of plaintiff's substantive claim and the sufficiency of the complaint together because of the relatedness of the two inquiries.  The court must consider whether the allegations in the complaint are sufficient to state a claim on which plaintiff may recover.  See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.  Here, plaintiff has adequately alleged that defendant incurred the above-mentioned payment obligations to Ally by executing the Guaranty, and that defendant has breached the Guaranty by failing to pay the amounts due to Ally pursuant to the Guaranty, despite numerous requests for payment by Ally. As such, the complaint sufficiently alleges a claim for breach of personal guaranty and has merit.

Therefore, the second and third Eitel factors favor the entry of default judgment.

        3.    *Factor Four: The Sum of Money at Stake in the Action*

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). In this case, plaintiff seeks over $500,000.00 from defendant. Although not an insignificant amount, a potentially large payment obligation was plainly contemplated when defendant personally guaranteed the payment obligations of an automobile dealership. Furthermore, failure to honor such a personal guaranty is a serious matter, because Ally relied on the personal guaranty to extend credit to Central Valley. Therefore, the sum of money at stake does not in itself preclude the entry of a default judgment.

        4.    *Factor Five: The Possibility of a Dispute Concerning Material Facts*

The court may assume the truth of well-pled facts in the complaint (except as to damages) following the clerk's entry of default, and defendant has not appeared to dispute any such facts. Thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177. Accordingly, the fifth Eitel factor favors the entry of default judgment.

        5.    *Factor Six: Whether the Default Was Due to Excusable Neglect*

In this case, there is no indication in the record that defendant's default was due to excusable neglect. Defendant was not only served with the complaint, but also the request for entry of default, the motion for default judgment, and the court's order providing an additional opportunity to oppose that motion. (ECF Nos. 13, 14, 19-8, 22.) Indeed, despite having been provided with multiple opportunities to appear and defend his interests, defendant apparently declined to do so. Accordingly, the sixth Eitel factor favors the entry of a default judgment.

////

      6.     *Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits*

"Cases should be decided upon their merits whenever reasonably possible." <u>Eitel</u>, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177; <u>see also</u> <u>Craigslist, Inc. v. Naturemarket, Inc.</u>, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Accordingly, although the court is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

In sum, upon consideration of all the <u>Eitel</u> factors, the court concludes that plaintiff is entitled to a default judgment against defendant. All that remains is a determination of the specific relief to which plaintiff is entitled.

      <u>Terms of the Judgment to Be Entered</u>

After determining that a party is entitled to the entry of default judgment, the court must determine the terms of the judgment to be entered. Plaintiff's motion for default judgment requests an award of damages, attorneys' fees, and costs, which were also requested in the complaint.

      *Damages*

The damages requested by Ally are essentially the deficiency that remains to be paid by defendant on Central Valley's Loan Agreements pursuant to the Guaranty. In support of its request for damages, Ally submitted the July 1, 2016 affidavit of Stephen Todd Soukop, a risk analyst employed by Ally, which provides a detailed itemization and computation of the damages claimed. (<u>See</u> ECF Nos. 19-5, 19-6.) In brief, the affidavit shows that, as of July 1, 2016, the balance due under the Loan Agreements is $722,079.06; the expenses incurred in disposing of the collateral amount to $93,277.96; and the proceeds from disposition of the collateral amount to $308,402.73, thereby resulting in a deficiency of $506,954.29. ($722,079.06 + $93,277.96 - $308,402.73 = $506,954.29.) The calculations appear correct and reasonable based on the

1  detailed itemization provided, and defendant has not contested them.  Because defendant was
2  obligated to pay the deficiency pursuant to the Guaranty, and has breached his obligation in that
3  regard, the court finds that plaintiff is entitled to $506,954.29 in damages.

*Attorneys' Fees and Costs*

As noted above, the Guaranty requires defendant to personally pay all costs, expenses, and attorneys' fees incurred by Ally in connection with any default by Central Valley.  (See Compl. Ex. E.)  Thus, pursuant to the express terms of the Guaranty, plaintiff is entitled to an award of attorneys' fees and costs.  The only question is whether the amount of requested attorneys' fees and costs is reasonable.

Plaintiff requests attorneys' fees in the amount of $59,581.95, which represents an unadjusted lodestar amount computed by multiplying counsel's hourly rate by the time spent on this matter.  Plaintiff does not request any multipliers or enhancements.

With respect to hourly rates, three attorneys and one paralegal billed plaintiff for work involving this matter: (1) attorney Duane Geck, who has 31 years of practice experience and billed at an hourly rate of $382.50; (2) attorney Donald Cram, who has 26 years of experience and billed at an hourly rate of $292.50; (3) attorney Eleanor Roman, who has 20 years of experience and billed at an hourly rate of $265.50; and (4) paralegal Shan Li, who obtained her paralegal certificate in 2009 and billed at an hourly rate of $130.50.  The court finds that these hourly rates are reasonable in light of prevailing market rates for this type of work performed in the Sacramento Division of the Eastern District of California.

Plaintiff's attorneys spent a total of 198.9 hours working on this matter.  (See Declaration of Eleanor M. Roman, ECF No. 19-2 ["Roman Decl."] ¶ 18.)  At first blush, the number of hours spent may appear to be excessive in a matter where a defendant simply failed to appear.  However, upon closer inspection, that characterization is not accurate under the circumstances of this case.

As an initial matter, as explained in the Roman Declaration, significant attorney time was spent on Central Valley's default long before this action was even filed.  Upon Central Valley's default, Ally was required to take numerous steps to protect its collateral, including, but not

1  limited to, conducting investigations, intervening in a state court action implicating the collateral
2  to protect Ally's rights from other creditors, having a receivership on Central Valley's assets set
3  aside, preparing for litigation against Central Valley, negotiating the voluntary surrender of
4  Central Valley's assets, and ultimately disposing of such assets.  After ascertaining that a
5  deficiency existed, Ally also attempted to obtain, via defendant's counsel at the time, voluntary
6  payment of the deficiency from defendant pursuant to the Guaranty.  Moreover, after this action
7  was filed, Ally was required to expend significant efforts over several months to locate and serve
8  defendant with process.  (See Roman Decl. ¶¶ 9-17.)  Because defendant agreed to pay all costs,
9  expenses, and attorneys' fees incurred by Ally in connection with Central Valley's default, Ally is
10 entitled to collect fees for all of the above-mentioned work in this breach of guaranty action.
11         Furthermore, a careful review of Ally's counsel's billing records reveals that the time was
12 reasonably spent, that such time was actually billed to Ally, and that the overwhelming majority
13 of work was performed by the attorney with the lowest hourly rate, Eleanor Roman, who billed at
14 an hourly rate of $265.50, as noted above.  (Roman. Decl. ¶ 18, Ex. A.)
15         Additionally, to the extent that defendant may take issue with any particular item of work
16 billed for, or the time spent on such work, defendant had an opportunity to appear and contest
17 Ally's fee request, but elected not to do so.
18         Therefore, the court finds that Ally is entitled to its requested amount of $59,581.95 in
19 attorneys' fees.
20         Finally, Ally seeks $3,284.20 in costs.  Such costs consist of filing fees and fees paid to
21 process servers for the extensive efforts made to locate and serve defendant with process.
22 Because the costs were reasonably incurred, the court finds that they should be awarded.
23 CONCLUSION
24         For the foregoing reasons, IT IS HEREBY ORDERED that:
25         1. Plaintiff's motion for entry of default judgment (ECF No. 19) is GRANTED.
26         2. Judgment is entered in plaintiff's favor and against defendant.
27         3. Plaintiff is awarded $506,954.29 in damages; $59,581.95 in attorneys' fees; and
28            $3,284.20 in costs, for a total of $569,820.44, with post-judgment interest accruing at

the applicable legal rate.

4. Plaintiff shall forthwith serve a copy of this order on defendant by U.S. mail at his last-known address, and shall file a proof of service on the docket.

5. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated:  October 11, 2016

*Kendall J. Newman*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE